# State of Louisiana
# Secretary of State

01/25/2024

Legal Services Section
P.O. Box 94125, Baton Rouge, LA 70804-9125
(225) 922-0415

NAUTILUS INSURANCE COMPANY
MR. THOMAS M. KUZMA, PRESIDENT/CEO
7233 EAST BUTHERUS DR.
SCOTTSDALE, AZ 85260

RECEIVED
FEB 01 2024
NAUTILUS INSURANCE GROUP
REGULATORY DEPT

Suit No.: 78497
40TH JUDICIAL DISTRICT COURT
SAINT JOHN THE BAPTIST PARISH

GERMAN COAST PROVISION, LLC
vs
NAUTILUS INSURANCE COMPANY

Dear Sir/Madam:

I am enclosing a citation served in regard to the above entitled proceeding. If you are not the intended recipient of this document, please return it to the above address with a letter of explanation. All other questions regarding this document should be addressed to the attorney that filed this proceeding.

Yours very truly,

NANCY LANDRY
Secretary of State

Served on: NANCY LANDRY
Served by: B GARAFOLA

Date: 01/24/2024
Title: DEPUTY SHERIFF

No: 1317048

KC

EXHIBIT
1

D55857924

# CITATION

| | |
|---|---|
| GERMAN COAST PROVISION, LLC | 40TH JUDICIAL DISTRICT COURT |
| VS | PARISH OF ST.JOHN THE BAPTIST |
| NAUTILUS INSURANCE COMPANY | STATE OF LOUISIANA |
| DOCKET NUMBER: C-78497 | DIVISION C |

---

**To: NAUTILUS INSURANCE COMPANY**
**THROUGH THE LOUISIANA SECRETARY OF STATE**
**8585 ARCHIVES AVENUE**
**BATON ROUGE, LA 70809**

**Parish: EAST BATON ROUGE**

SERVED ON
NANCY LANDRY
JAN 24 2024
SECRETARY OF STATE
COMMERCIAL DIVISION

---

You are hereby summoned to comply with the demand contained in the Petition of which a true and correct copy accompanies this citation, or make an appearance either by filing an Answer or other pleading to said Petition, in the Fortieth Judicial District Court in and for the Parish of St. John the Baptist, State of Louisiana, within **twenty-one (21) days** after the service hereof, under penalty of default.

This service was ordered by **ATTY. MATTHEW B. MORELAND** and was issued by the Clerk of Court on **JANUARY 10, 2024.**

* Also attached are the following documents:
**PETITION FOR BREACH OF CONTRACT AND DAMAGES; CASE MANAGEMENT ORDER; AND DISCLOSURE ORDER.**

Lisa Tregre

***LISA TREGRE***
Deputy Clerk of Court for
Eliana DeFrancesch, Clerk of Court

RECEIVED ON THE ________ DAY OF ___________, 20______ AND ON THE _______ DAY OF ______________, 20_____ SERVED THE ABOVE NAMED PARTY AS FOLLOWS:

PERSONAL SERVICE ON THE PARTY HEREIN NAMED ___________________.

DOMICILIARY SERVICE ON THE PARTY HEREIN NAMED BY LEAVING THE SAME AT HIS

DOMICILE IN THE PARISH IN THE HANDS OF _______________________________, A

PERSON APPARENTLY OVER THE AGE OF SEVENTEEN YEARS, LIVING AND RESIDED IN

SAID DOMICILE AND WHOSE NAME AND OTHER FACTS CONNECTED WITH THIS SERVICE, I LEARNED BY INTERROGATING THE SAID PERSON, SAID PARTY HEREIN BEING ABSENT FROM HIS RESIDENCE AT THE TIME OF SAID SERVICE.

RETURNED: PARISH OF ________________________ THIS __________ DAY OF _______________, 20____.

SERVICE $______________
MILEAGE $______________
TOTAL $______________

BY:______________________________
DEPUTY SHERIFF

ORIGINAL – RETURN COPY – SERVICE COPY - CLERK

Eliana DeFrancesch - Clerk of Court
Filed: Sep 02, 2022 10:55 AM
15132603

**40TH JUDICIAL DISTRICT COURT FOR THE PARISH OF ST. JOHN THE BAPTIST**

**STATE OF LOUISIANA**

**NO.** 78497 **DIV C DIVISION " "**

**GERMAN COAST PROVISION, LLC**

**v.**

**NAUTILUS INSURANCE COMPANY**

**FILED:** ____________________ ____________________ **DEPUTY CLERK**

PREVIOUSLY FILED 29th DAY OF Aug. 20 22 BY FAX ON DEPUTY CLERK OF COURT

**PETITION FOR BREACH OF CONTRACT AND DAMAGES**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, German Coast Provision, LLC, in the above titled action, who files this Petition for Breach of Contract and Damages against the Defendant named herein, and in support thereof, respectfully represents the following:

1.

Plaintiff, German Coast Provision, LLC, is a limited liability corporation formed under the Laws of Louisiana full age of majority and domiciled in the Parish of St. John the Baptist, State of Louisiana.

2.

Made defendant herein is Nautilus Insurance Company, upon information and belief, a foreign insurance company authorized to do and doing business in the Parish of St. John the Baptist, State of Louisiana.

3.

Venue is proper in this court pursuant to Louisiana Code of Civil Procedure Article 76, because the loss occurred in St. John the Baptist Parish.

4.

Plaintiff owns property located at 769 West Fifth, LaPlace, Louisiana 70068.

5.

The Nautilus Insurance Company issued a policy of insurance covering Plaintiff's above-referenced property, which was in full force and effect at the time of the loss asserted herein. The policy number is NN1124241.

6.

On or about August 29, 2021, Plaintiff's property was damaged directly and/or indirectly due to Hurricane Ida.

7.

Plaintiff gave timely notice of the damage to Defendant and, therefore, the defendant knew almost immediately that plaintiff's property had sustained severe physical and structural damage and plaintiff had sustained other losses and damages covered under the policies in question.

8.

Plaintiff submitted proof of loss to the defendant in a timely fashion.

9.

Defendant tendered insufficient payment to Plaintiff. These tenders were calculated using below market unit price figures for various items damaged and/or destroyed in the occurrence and did not pay or intentionally underpaid industry standard scope of damages and items, which practices resulted in significantly lower payments made to the plaintiff which were inadequate to repair the damages sustained. Said payments were not in compliance with the terms of the policy and practices of the insurance industry.

10.

Plaintiff alleges that the use of the below market unit pricing and nonpayment or intentional underpayment of industry standard scope of damages and items by the defendant herein was intentional and in bad faith. Defendant insurance company engaged in a wrongful scheme to delay, deny or underpay claims by repeatedly utilizing below market unit pricing all in contravention of the terms of the policy issued and the practices of the industry.

11.

Defendant have underpaid plaintiff for the wind damages sustained under the terms of their own policy and for rain damage sustained as a result of damage to the roof.

12.

Plaintiff specifically alleges that all damages sustained were in fact covered under the policy issued by the defendant.

13.

The failure of the defendant to make just and adequate payments as above described constitute violation of widely accepted standards throughout the insurance industry, violation of fair claims adjusting practices, and violations of multiple Louisiana state statutes concerning regulation of the insurance industry and fair trade practices, all of which rendered Defendant liable for interest, penalties, attorneys' fees and punitive damages in addition to amounts still remaining due under policy provisions.

14.

La R.S. 22:1892 requires insurers, among other things, to pay the amount of any claim due its insureds within thirty (30) days after receipt of satisfactory proof of loss, to initiate loss adjustment within thirty (30) days of notification of the loss by claimant and make a written offer to settle within thirty (30) days of satisfactory proof of loss. Defendant herein failed to comply.

15.

Defendant's actions, as above described, were arbitrary, capricious and without probable cause and were in bad faith making defendant liable to plaintiff for damages, penalties, and attorney's fees under the above-cited statute.

16.

Furthermore, La. R.S. 22:1973 provides that an insurer owes a duty of good faith and fair dealing to its insured, and it provides that insurers have an affirmative duty to adjust claims fairly and promptly and to make reasonable efforts to settle claims. Defendant herein failed to comply.

17.

Based on the conduct and actions of Defendant as described above, Plaintiff have the following causes of action against Defendant:

1. Breach of insurance contract;
2. Violation of La. R.S. 22:1892;
3. Violation of La. R.S. 22:1973;
4. Violation of State and Federal laws pertaining to unfair trade practices;

5. Failure to tender fair and adequate payment for casualty losses;
6. Bad faith adjusting practices; and
7. Other causes of actions that will be determined at trial.

18.

Plaintiff is entitled to the following elements of damages for the causes of action previously mentioned:

1. Full reimbursement for property damages and proper per unit pricing and payment for industry standard items;
2. Lost rents;
3. Penalties under La. R.S. 22:1973 and 22:1892;
4. Fifty percent (50%) penalties for failure to submit payment within thirty (30) days from proof of claim;
5. Attorneys' fees;
6. Emotional distress caused by defendant's improper actions;
7. Loss of use of property;
8. Loss of enjoyment of property;
9. Diminution of value of the property;
10. Court costs;
11. All benefits under applicable policies of insurance; and
12. Any relief that this Honorable Court deems fair and equitable.

19.

Plaintiff further allege that the defendant is liable for punitive damages pursuant to Louisiana Civil Code Article 3546 in that the decision to utilize below market unit pricing and failure to pay for industry standard scope of damage and items occurred in states which authorize the award of punitive damages and was further authorized by the law of the place where the person whose conduct caused the injury was domiciled.

20.

Plaintiff allege all of the above cited actions of Nautilus Insurance Company constitute unfair trade practices pursuant to the Louisiana Fair Trade Practices Act. R.S. 51:1401, et seq., in

that the described acts amounted to an egregious action which involved misrepresentation, fraud, deception and other unethical conduct on the part of defendant.

21.

R.S. 51:1409 (a) grants a right of action to any person who suffers any ascertainable loss from a violation of the above stated prohibition.

22.

Plaintiff are entitled to any and all damages recoverable under the Louisiana Fair Trade Practices including actual damages as set forth above, court costs, attorney fees and treble damages.

**WHEREFORE,** Plaintiff pray that after due proceedings be had there be judgment in his favor and against the defendant, Nautilus Insurance Company, that is reasonable under the circumstances, including damages for mental and emotional suffering caused by the action of the defendant, all benefits under applicable policies of insurance, penalties, attorney's fees, expert witness fees, punitive damages and interest and all costs for this proceeding.

Respectfully Submitted:

**JIM S. HALL & ASSOCIATES,** LLC.

**JIM S. HALL (Bar No.: 21644)**
**Jodi@jimshall.com**
**MATTHEW B. MORELAND** (#24567)
Mmoreland@jimshall.com
**JENNIFER L. CROSE** (#32116)
Jcrose@jimshall.com
800 N. Causeway Blvd., Suite #100
Metairie, Louisiana 70001
Telephone: 504-832-3000
Facsimile: 504-832-1799

**PLEASE SERVE:**
NAUTILUS INSURANCE COMPANY
Through:
LOUISIANA SECRETARY OF STATE
8585 Archives Ave.
Baton Rouge, LA 70809

I HEREBY CERTIFY THAT THE ABOVE AND FOREGOING IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE AND OF RECORD IN MY OFFICE
DY. CLERK OF COURT
PARISH OF ST. JOHN THE BAPTIST, LA
DATE 1/11/24

ORIGINAL

| | | |
|---|---|---|
| IN RE: HURRICANE IDA CLAIMS | : | STATE OF LOUISIANA |
| #78497 | : | PARISH OF ST. JOHN |
| **DIV C** | : | 40[TH] JUDICIAL DISTRICT COURT |

DEPUTY CLERK

St. John the Baptist Parish
Clerk of Court
Eliana DeFrancesch
Filed:Edgard date: 10/21/21 Time2:46PM

## CASE MANAGEMENT ORDER

## REGARDING CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANE IDA

On August 29, 2021, Hurricane Ida came ashore near Port Fourchon, Louisiana and left destruction throughout St. John Parish as a major Hurricane.[1] Major Hurricane-force winds measured in excess of 100 mph and rain of 17 inches inflicted catastrophic damage in this Court's jurisdiction.[2] The causes of action arising therefrom may sometimes be referred to as "the Hurricane Cases."[3]

In the aftermath of these catastrophic natural disasters, this Court recognizes a high number of insurance coverage-related litigation linked to the Hurricane. In Act 318 of the 2021 Regular Session the Legislature of Louisiana amended the laws expanding judicial authority related to special masters and mandatory mediation in cases stemming from certain major disasters ("Act 318").[4]

Act 318 authorizes this court to issue this CMO, this Court finds it warranted to best accommodate the adjudication of Hurricane cases in this Court.[5] Accordingly, this Court's aim continues to be the just and expedient resolution of these related matters, in spite of the increased strain on the Court's resources, and with the primary goal of enabling the St. John Parish community to move forward with crucial recovery efforts, in the aftermath of the Hurricane and the ongoing Coronavirus pandemic.

---

[1] https://www.theadvocate.com/baton_rouge/news/article_0cc1dc86-0a90-11ec-827e-6342102b8d5d.html

[2] https://www.nbcnews.com/news/us-news/live-blog/hurricane-ida-live-updates-8-30-n1277989/ncrd1278026#liveBlogHeader ; https://www.weather.gov/lix/hurricaneida2021 ; and https://www.wwltv.com/article/news/local/laplace-louisiana-hurricane-damage-recovery/289-eac47daf-e394-4b14-9c2c-034ab28c6b8a

[3] All causes of action concerning damage related to Hurricane Ida is subject to this Order, including causes of action where the third-party demand or cross claim is a claim against an insurer by an insured due to damage from the Hurricane

[4] Hurricane Ida qualifies pursuant to R.S. 13:4165(F)(1). A major disaster declaration was made by the President for St. John Parish in Hurricane Ida under FEMA Release No. HQ-21-181. St. John Parish qualified for individual assistance for the Hurricane (FEMA designation DR-4611-LA).

[5] Hurricane Ida ties Hurricane Laura for the strongest hurricane to hit Louisiana and the fifth strongest Hurricane to hit the United States. Act 318 was enacted in the aftermath of Hurricane Laura and this CMO is modeled extensively on the CMO successfully adopted by the 14[th] Judicial District Court following Hurricane Laura

NON-CERTIFIED COPY

**IT IS HEREBY ORDERED** that this Case Management Order shall be immediately applicable to all Hurricane Cases currently pending or hereafter filed in this Court.

**SECTION I. DISASTER PROTOCOLS FOR INITIAL DISCLOSURES**

The Court has reviewed the Disaster Litigation Initial Discovery Disaster Protocols adopted by the United States District Court for the Western District of Louisiana, applicable to all Hurricane Cases[6] and the nearly identical Disaster Protocols implemented by the U.S. District Court for the Southern District of Texas following Hurricane Harvey.[7] These Disaster Protocols call for prompt sharing of specific information to promote uniformity, to facilitate prompt evaluation of each case, to foster communication between the parties, and to facilitate an expedited mediation procedure.

Accordingly, this Court has adopted the Disaster Protocols attached hereto as Exhibit "A" in the Disaster Protocols Order and makes them applicable to all Hurricane cases filed in this Court. Additionally, **IT IS HEREBY ORDERED** that there shall be an automatic extension of time to Answer in every Hurricane case until the 30th day after service of the plaintiff's petition. No further extensions of time shall be granted except in exigent circumstances.

Additionally, **IT IS HEREBY ORDERED** that the disclosures and exchange of information required by the Disaster Protocols Order shall be due 45 days from the date that defendant files responsive pleadings. This deadline may sometimes hereinafter be referred to as the "Disclosure Deadline". Even if the parties agree to further extension of time to file responsive pleadings, the Disclosure Deadline shall be no more than 90 days from the service of the petition unless the extension of the Disclosure Deadline is expressly extended by the written consent of all parties or pursuant to an express Order of this Court to extend it.

**IT IS FURTHER ORDERED** that each party shall supplement their Initial Disclosures at least twenty-one days prior to any scheduled mediation pursuant to the CMO.[8]

**IT IS FURTHER ORDERED** that all other discovery is stayed until certification of the completion of the SSP. However, the Special Master may authorize limited formal discovery during the SSP in extraordinary circumstances.

---

[6] https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1_Att_A_Discovery_Protocols 062121.rd_0.pdf

[7] *United States District Court for the Southern District of Texas*, Disaster Litigation Initial Discovery Protocols, *available at* https://www.txs.uscourts.gov/sites/txs/files/Disaster%20FINAL%20Web%20version.pdf

[8] If the Special Master finds a production under the Disaster Disclosures too voluminous or disorganized to be useful for the SSP, he may require that the Disaster Disclosures be bates numbered and organized with a Table of Contents.



NON-CERTIFIED COPY

**SECTION 2. PRIVILEGE**

Documents for which a privilege may properly be asserted include communications that reflect the mental impressions, conclusions, opinions, or theories of an attorney.[9] However, as recognized by federal courts concerning hurricane cases "Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are not privileged and should be produced."[10]

Therefore, IT IS FURTHER ORDERED that any party withholding disclosure of any information or documents, where said disclosure is required pursuant to the Disaster Protocols, shall produce a privilege log to opposing counsel on or before the Disclosure Deadline. This privilege log shall detail all information or documents that it declined to produce on the basis of that the material is privileged. The log should include the author of the document, the recipient of the document, the date of the document, and the nature of the privilege asserted.

Any dispute concerning privileged items shall be referred to the Special Master. If a motion to compel related to the privilege log is filed, or if any other privilege dispute is raised with the Special Master, the disputed items shall be provided to the Special Master *in camera* within ten days. The Special Master or his designated deputy shall provide all parties with a report and recommendation concerning the claimed privilege.

If neither party opposes the report and recommendation within seven days of its receipt then the Court may issue an Order confirming it. If either party opposes the report and recommendation within seven days of its receipt then the report shall be transmitted to the Court by the Special Master together with the *in camera documents*. The opposing party may file a memorandum concerning the report and recommendation within seven days of receiving the report, and any other party may file a response within five days of the filing of the opposition.

**SECTION 3. SPECIAL MASTER AND APPOINTED NEUTRALS**

Considering the foregoing reasons supplied by the Court in the introduction *infra*, the

[9] La. C.C.P. art. 1424(A)

[10] United States District Court for the Western District of Louisiana, *In Re Hurricane Laura and Delta Cases: Case Management Order No. 1*, p. 3, *available at* https://www.lawd.uscourts.gov/sites/lawd/files/UPLOADS/Hurricane_Laura_Delta_CMO_1.012221.tzd.pdf

United States District Court for the Eastern District of New York, *In Re Hurricane Sandy Cases: Case Management Order No. 1*, p. 10, *available at* https://img.nyed.uscourts.gov/files/general-ordes/14mc41cmo01.pdf

NON-CERTIFIED COPY

Court finds that exceptional circumstances exist which warrant the appointment of a Special Master to assist with the efficient and fair administration of all Hurricane Cases. Pursuant to the Court's inherent judicial power and its authority under La. R.S. 13:4165, *et seq*, it is ordered that **THE COURT HEREBY APPOINTS CADE R. COLE, ESQ.** as the Special Master for Hurricane Cases in the 40th Judicial District Court.

The Court takes specific notice of his role as Special Master under the CMO for Hurricane cases in other district courts. The Court anticipates that this appointment and continued coordination with any federal Special Master will encourage consistent resolutions of Hurricane Cases. As part of their appointment, the Court mandates that the Special Master shall proceed with all reasonable diligence and shall exercise their respective rights and responsibilities to direct the Streamlined Settlement Process as provided in this Order.

**IT IS FURTHER ORDERED that** the Neutrals, referenced in Section 4(II)(B), *supra*, are hereby appointed and shall proceed with all reasonable diligence and shall exercise their rights and responsibilities under the Streamlined Settlement Process ("SSP") as the Special Master may direct.

*I. The Special Master*

The Special Master shall administer, coordinate, and preside over the SSP. This authority includes the power to order parties and/or party representatives with full power of settlement to submit briefing, engage in discovery, and attend settlement conferences. The Special Master may enter any other order to effectuate the provisions of the SSP, subject to the review and control of the Court.

*II. Compensation of Appointed Neutrals*

The Special Master, his designated deputies, and all other appointed neutrals under the SSP (the "Appointed Neutrals") shall be compensated in the amount of:

A. $400 per hour for the Special Master or Appointed Neutrals;

B. $280 per case for the Special Master for administrative expenses in administering, scheduling, organizing, and coordinating the Streamlined Settlement Process for each case amongst the parties as well as with the Appointed Neutrals; and

C. all actual expenses of the Appointed Neutrals, including but not limited to travel, meeting rooms, telephone, and electronic audio or video conference means.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Special Master, all of the above fees and expenses shall be paid twenty-five percent (25%) by the plaintiff(s) and seventy-five (75%) by the defense(s).[11]

**IT IS FURTHER ORDERED that** $70 of the administrative fee provided for in Section II(B) shall be added to the cost of filing the petition, collected by the clerk

[11] In instances where an insurer of an insured has filed suit against the insured concerning a Hurricane case the insured shall be considered the plaintiff for the purposes of the cost split under this order and the insurer shall be considered the defendant. It is generally customary in the event of settlement that a condition of settlement be that the insurer pays court costs and costs of the SSP/mediation.

NON-CERTIFIED COPY

of court, and remitted monthly to the Special Master; and that $210 of the administrative fee provided for in Section II(B) shall be added to the cost of the first notice or filing by the defendant, collected by the clerk of court, and remitted monthly to the Special Master.

*III. Role of Appointed Neutrals*

A. The Special Master and Appointed Neutrals may communicate *ex parte* with the Court when deemed appropriate by the Special Master, at his discretion, without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

B. The Special Master and Appointed Neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

C. The Special Master and Appointed Neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

D. The Special Master may designate any of the Appointed Neutrals to act as his deputy from time to time and to perform any duties of the Special Master.

E. If an Appointed Neutral reports that a case did not settle due to a party's failure to comply with its obligations under the Disaster Protocols, including the obligation to supplement the Disaster Disclosures at least twenty-one (21) days prior to the mediation, the Special Master may order another mediation and may assess the full cost of the first mediation against the party in violation.

*IV. Notice to the Special Master.*

Any party to a Hurricane Case may file a motion with the assigned District Judge requesting an opt out from the SSP only for good cause shown within the applicable deadline (*see* Section 4 below). **IT IS FURTHER ORDERED that** any party filing an opt out motion shall copy the Special Master, and that the parties shall provide notice of the Court's Order on the motion to opt out to the Special Master whether the motion to opt out is granted or denied.

**IT IS FURTHER ORDERED that** counsel for any party to a Hurricane Case that has been provided a copy of this Order shall be required to provide email notice to the Special Master of the initial pleadings and all subsequent filings in any Hurricane Case (knowledge of this provision is presumed where a counsel for the party has been provided a copy of this Order for a case for that party or any other party). The Special Master shall send an Initial Informational Package on the SSP to all parties and/or counsel of record for Hurricane Cases subject to the SSP.

## SECTION 4. STREAMLINED SETTLEMENT PROCESS ("SSP")

Within 15 days of the filing of the defendant's responsive pleading (or within 15 days of the receipt of a copy of this Order by the defendant or its counsel, including by electronic or other means -- whichever is later), either party may file a motion to opt out of this Streamlined Settlement Process for good cause shown. This motion may be decided on the briefs without hearing. Unless the Court authorizes an opt out, then the parties shall participate in the two-staged Streamlined Settlement Process, which is described as follows:

*I. First Stage: Settlement Conference*

Within 45 days of the Disclosure Deadline in all Hurricane Cases, all parties shall conduct an informal settlement conference ("ISC") among all parties and their counsel. Within 15 days of the Disclosure Deadline counsel shall meet to confer and discuss a mutually convenient time, date, and manner for the conference. In light of

NON-CERTIFIED COPY

the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, settlement conferences should be conducted, where possible, by phone or audiovisual communication, including but not limited to Zoom, Skype, or similar platforms.

Counsel for each plaintiff and for each defendant must have full authority to resolve the case from their clients, who shall be readily available by telephone if circumstances for the ISC require assistance.

The ISC shall include a particularized demand from the plaintiff that is itemized by each claimed policy coverage category then known to be remaining in dispute and or any existing demand for extra-contractual damages that are then claimed to be incurred. The demand shall be submitted by email to the opposing counsel on the form attached as Exhibit "C" at least 72 hours prior to the scheduled ISC.

The attorney for the insurer will conduct a call prior to the ISC with the relevant client representative to ensure the client representative has reviewed the ISC demand. The client representative will inform their counsel concerning additional information requested to evaluate the claim, and their counsel shall convey that to opposing counsel at the ISC or in writing. The insurer shall submit by email to the opposing counsel an itemization of the prior payments awarded by coverage category on the form attached as Exhibit "D" at least 72 hours prior to the scheduled ISC.

The defendant shall respond at the ISC to briefly detail why it does not agree with the demand by category. The plaintiff may request that this response be reduced to writing, and if requested it shall be answered within 15 days of the ISC.

All ISC communications shall be covered by mediation confidentiality. The Special Master may order any particular modifications in this protocol for specific cases, parties, or attorneys.

*II. Second Stage: Mediation*

Cases that do not resolve during the initial settlement conference shall be set for a formal mediation. The parties shall provide the Special Master written notice (including by email and preferably jointly) of completion of the First Stage along with a request for mediation. The Special Master may assign a neutral within 60 days of the Disclosure Deadline even if neither party submits the written notice. The Special Master shall then assign each Hurricane Case to an Assigned Neutral, and it is the goal that Assigned Neutrals complete mediation within 90 days of appointment. The Special Master (or Appointed Neutral for the case) may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties. In the event a counsel provides an insufficient number of available dates the Special Master may authorize an extension of the SSP period for that case or may require mediation on a date selected by the Special Master, including on a weekend day.

A. <u>Conduct of Mediation</u>

After scheduling of an agreed mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, on the length of the confidential mediation statements and the permissible number of exhibits attached thereto.

Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the case's Appointed Neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Special Master the defendant(s) representative shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone, if circumstances for that particular mediation require assistance.

NON-CERTIFIED COPY

To the extent agreed by the parties and the case's Appointed Neutral, this mediation conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

As part of this Streamlined Settlement Process, the attendees may be invited to each make opening statements but there shall be no live witness testimony.

B. <u>List of Neutrals</u>

The Court hereby initially designates and appoints the following individuals as "neutrals" (mediators) for the SSP:

Any person designated by the Special Master after consultation with the Court who is qualified pursuant to R.S. 13:4165(F)(5).

C. <u>Neutral Training</u>

The Special Master may undertake to provide special training to the neutrals, including coordinating participation in training prepared for the Streamlined Settlement Process. The Special Master may form a plaintiffs' liaison committee and a defense liaison committee or may coordinate with any related Federal Court liaison committees for Hurricane Cases. If formed, the Special Master may solicit input and responses concerning commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Special Master may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The Special Master may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

*III. Extensions of Time*

Upon a joint request by the parties, or for other good cause shown, the Special Master may extend any deadline specified in this Order.

SECTION 5. COURT APPOINTED UMPIRES REQUIRED UNDER POLICIES

If an insurance policy implicated in a Hurricane Case provides for court appointment of a neutral or third appraiser for valuation disputes (hereinafter referred to as an "Umpire"), any request for the appointment by this Court of an Umpire shall only occur if the parties have been unable to agree on their own.

Any request for the appointment by the Court of an Umpire shall be made in writing no later than the deadline for filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Special Master via email at <u>Hurricaneida@coklaw.us</u> . This deadline may be extended by the Special Master in exceptional circumstances for good cause.

If a requesting party is seeking court appointment of an Umpire and no case is otherwise filed or pending before this Court (an "Umpire Only Filing"), then the parties shall



NON-CERTIFIED COPY

follow the same procedures.

An Insurer is required to provide written notice of the request to any known counsel for the Insured (or directly to an unrepresented Insured). An Insured is required to provide written notice of the request to any known counsel of Insurer (if any) or alternatively to the Insurer's primary point of contact on the claim with Insured. The appraisers previously selected by each party shall also be provided notice, and their contact information (phone and email address) shall be provided in the request for appointment of an Umpire.

A written report and recommendation concerning the Umpire's appointment shall be issued to the parties and shall be deemed applicable to the parties in the same manner as if made by an order of the Court unless the report and recommendation is overturned by the assigned District Judge for good cause following a motion opposing the report and recommendation filed within seven days of transmittal of the written report and recommendation. Alternatively, the Special Master may issue the report and recommendation to the Court, and the Court may directly issue an Order concerning the appointment.

In an Umpire Only Filing, the Special Master may provide the report and recommendation to the civil Duty Judge as of the time of the issuance of the report and recommendations. Alternatively, the Special Master may issue the report and recommendation to the parties in the same manner described in the paragraph above. If any party objects to the report and recommendation in an Umpire Only Filing then it shall file a formal petition concerning the underlying dispute within seven days and the case shall be assigned to a judge in the usual manner for a decision concerning the report.

**IT IS ORDERED** that the appraisers appointed by the parties are required to complete their work and submit any disputes to the Umpire no later than 60 days following the first Initial Disclosure Deadline under this Order (105 days following the filing of the defendant's responsive pleadings). The appointed Umpire shall issue his report no later than 21 days from the submission of the dispute to the Umpire. This period may be extended by the Special Master upon a showing of good cause.

SECTION 7. CLERK OF COURT AND NOTICE

A Plaintiff filing a Hurricane Case should note on its cover letter, in ***ALL CAPS*** and ***RED FONT***, that the matter is a "HURRICANE CASE". **Each caption and on each pleading, "HURRICANE CASE" in bold print shall follow the docket number.** If the Special Master learns the Order has not been entered by the Clerk of Court, he shall serve it on the parties by



NON-CERTIFIED COPY

email and may file proof of the same into the record at no cost.

In all subsequently filed Hurricane Cases, a copy of this order shall be served on the defendant(s) along with the Petition and Citation. The Clerk of Court shall include a reference that the Case Management Order is served with the Petition in the Citation issued. The Clerk of Court shall also provide a copy to the plaintiff by any authorized means.

The Clerk of Court shall transmit via email, at least weekly, to the Special Master the docket numbers, case caption, and attorney contact information for any Hurricane Cases filed.

Any party making any filing or submitting any memoranda in a Hurricane Case subject to this Order shall serve a courtesy copy on the Special Master in the same manner as enrolled counsel via email at Hurricaneida@colelaw.us.

SECTION 7. COURT SUPERVISION

The Disaster Protocols and Streamlined Settlement Process shall, at all times, be subject to the ultimate control and supervision of the Court. This Case Management Order for Hurricane Cases is subject to modification pursuant to further orders of this Court. All provisions of this Order shall be applicable to all cases whether then pending or thereafter filed.

SO ORDERED on this 20 day of October, 2021, at Edgard, Louisiana.

Hon. VERCELL FIFFIE
District Judge, Division A

Hon. NGHANA LEWIS
District Judge, Division B

Hon. J. STERLING SNOWDY
District Judge, Division C

NON-CERTIFIED COPY

| | | |
|---|---|---|
| IN RE: HURRICANE IDA CLAIMS | : | STATE OF LOUISIANA |
| | : | PARISH OF ST. JOHN |
| | : | 40TH JUDICIAL DISTRICT COURT |

**EXHIBIT "B"**

**STIPULATION FOR MEDIATION**

**IT IS HEREBY STIPULATED AND AGREED** by and between the undersigned parties:

1. The parties agreed to submit their dispute to mediation pursuant to the SSP, as specified in the Case Management Order (and any relevant supplements).

2. No party shall be bound by anything said or done during the mediation, unless either a written and signed stipulation is entered into or the parties enter into a written and signed agreement. The appointed neutral may meet in private conference with less than all parties. Information obtained by the neutral, either in written or oral form, shall be confidential and except as provided by Order of the Court it shall not be revealed by the neutral unless and until the party who provided the information agrees to its disclosure.

3. The mediation process, for the purpose of all federal and state rules protecting disclosures made during such conferences from later discovery or use in evidence, shall be considered a settlement negotiation. The entire procedure shall be confidential, and no stenographic or other record shall be made except to memorialize a settlement record. All communications, oral or written, made during the mediation by any party or a party's agent, employee, or attorney are confidential and, where appropriate, are to be considered work product and privileged. Such communications, statements, promises, offers, views and opinions shall not be subject to any discovery or admissible for any purpose, including impeachment, in any litigation or other proceeding involving the parties. However, any evidence which would otherwise subject to discovery or admissible shall not be excluded from discovery or admission in evidence solely because it has been referenced or discussed during this mediation process.

4. The appointed neutral and their agents shall enjoy the same immunity as judges and court employees, whether under federal or state law, for any act or omission in connection with the mediation, and from compulsory process to testify or produce documents in connection with the mediation.

5. The parties shall not:

   (i) Call or subpoena the appointed neutral as a witness or expert in any proceeding



NON-CERTIFIED COPY

relating to: the mediation, the subject matter of the mediation, or any thoughts or impressions which the appointed neutral may have about the parties in the mediation;

(ii) Subpoena any notes, documents or other material prepared by the appointed neutral in the course of or in connection with the mediation; and

(iii) Offer into evidence any statements, views or opinions of theappointed neutral.

6. The appointed neutral's services have been made available to the parties through the dispute resolution procedures sponsored by the Court. In accordance with those procedures, the appointed neutral represents that he or she has taken requisite oaths.

7. Any party to this Stipulation is required to attend at least one session and as may be directed by the Special Master as many other sessions thereafter as may be helpful in resolving this dispute.

8. An individual with final authority to settle the matter and to bind the party shall attend the mediation on behalf of each party.

| | |
|---|---|
| PLAINTIFF | COUNSEL FOR PLAINTIFF |
| Date ______ | Date: ______ |
| DEFENDANT | COUNSEL FOR DEFENDANT |
| Date ______ | Date: ______ |

CONSENTED TO BY:

______________________________
NEUTRAL APPOINTED BY THE COURT

Date ______



NON-CERTIFIED COPY

| | | |
|---|---|---|
| IN RE: HURRICANE IDA CLAIMS | : | STATE OF LOUISIANA |
| | : | PARISH OF ST. JOHN |
| | : | 40TH JUDICIAL DISTRICT COURT |

EXHIBIT "C"

FORM FOR ISC DEMAND BY INSURED

| Category | Policy Limits | Damage | Prior Payments | ISC DEMAND |
|---|---|---|---|---|
| A. Property | | | | |
| B. Other Structures | | | | |
| C. Personal Property | | | | |
| D. ALE | | | | |
| Claim for Penalties on Late Prior Payments | | | | |
| Claim for Penalties on ISC Demand | | | | |
| Claim for Attorney's Fees | | | | |
| Claim for Other Damages (describe below): | | | | |
| TOTAL | | | | |

This demand is for the purposes of mediation only and is covered by mediation confidentiality. It may not be used for any other purpose. It is rescinded if the case does not settle as part of the SSP. The plaintiff reserves the right to modify the demand based on additional information. The plaintiff reserves the right to claim expert costs, judicial interest, and mental anguish / economic damages and related penalties pursuant to R.S. 22:1973 at any trial of this matter even if they are not listed above.



NON-CERTIFIED COPY

| | | |
|---|---|---|
| IN RE: HURRICANE IDA CLAIMS | : | STATE OF LOUISIANA |
| | : | PARISH OF ST. JOHN |
| | : | 40TH JUDICIAL DISTRICT COURT |

EXHIBIT "D"

FORM FOR ISC DETAIL OF PAYMENTS BY INSURER

| Category | Policy Limits | Prior Payments |
|---|---|---|
| A. Property | | |
| B. Other Structures | | |
| C. Personal Property | | |
| D. ALE | | |
| OTHER. | | |
| TOTAL | | |



NON-CERTIFIED COPY

ORIGINAL

IN RE: HURRICANE IDA CLAIMS : STATE OF LOUISIANA

DIV "C"

# 78497 : PARISH OF ST. JOHN

St. John the Baptist Parish : 40TH JUDICIAL DISTRICT COURT
Clerk of Court
Eliana DeFrancesch
Filed:Edgard date: 10/21/21 Time2:46PM

DEPUTY CLERK

## STANDING ORDER REGARDING INITIAL DISCOVERY PROTOCOLS IN CERTAIN PROPERTY DAMAGE SUITS ARISING FROM HURRICANES IDA

This Court hereby **ORDERS** the that the following protocols for initial discovery disclosure ("Disaster Protocols") shall be observed in all cases involving first-party insurance property damage claims arising from Hurricane Ida ("Hurricane Cases"):

Within 45 days after the defendant's submission of a responsive pleading or motion, the parties must exchange any documents or information categorized under the Disaster Protocols, for any such time periods identified in the Disaster Protocols. All parties shall remain under an ongoing duty to supplement these responses. No extension or delay in the time to file responsive pleadings shall extend the Disclosure Deadline to more than 90 days from the service of the petition unless the extension is by the consent of all parties or pursuant to an express Order of this Court extending the Disclosure Deadline. A supplemental response is due 21 days prior to mediation.

A party may object to disclosure of these initial discovery materials *only* if the material falls within one of the categories specifically enumerated in the Disaster Protocols – including, but not limited to. attorney-client privileged material. or work-product protection, including any joint defense agreement. Should any party raise such an objection, the non-disclosing party shall provide a log of all material being withheld from disclosure. which shall include the specific grounds upon which the disclosure is being withheld.

If any party believes that there is good cause why a particular case should be exempted from the Disaster Protocols. in whole or in part. that party must file their objection with the court prior to



NON-CERTIFIED COPY

the expiration of the 45-day period set forth herein.

SO ORDERED on this 20 day of October, 2021, at Edgard, Louisiana.

Hon. VERCELL FIFFIE
District Judge, Division A

Hon. NGHANA LEWIS
District Judge, Division B

Hon. J. STERLING SNOWDY
District Judge, Division C



NON-CERTIFIED COPY

EXHIBIT "A"

## INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE CASES ARISING FROM HURRICANE IDA

### PART I: INTRODUCTION AND DEFINITIONS.

(1) Statement of purpose.

a. These Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") apply to cases involving first-party insurance property damage claims arising from man-made or natural disasters ("Disaster Cases"). The Disaster Protocols are designed to be implemented by trial judges, lawyers, and litigants in state and federal courts. The Disaster Protocols make it easier and faster for the parties and their counsel to: (1) exchange important information and documents early in the case; (2) frame the issues to be resolved; (3) value the claims for possible early resolution; and (4) plan for more efficient and targeted subsequent formal discovery, if needed.

b. Participating courts may implement the Disaster Protocols by local rule or by standing, general, or individual-case orders. Although the Disaster Protocols are designed for the full range of case size and complexity, if any party believes that there is good cause why a case should be exempted, in whole or in part, from the Disaster Protocols, that party may raise the issue with the court.

c. The Disaster Protocols are not intended to preclude or modify any party's rights to formal discovery as provided by law, code or other applicable rules. Responses to the Disaster Protocols do not waive or foreclose a party's right to seek additional discovery under the applicable rules.

d. Except as modified by the court, the Disaster Protocols were prepared by a balanced group of highly experienced attorneys from across the country with expertise in Disaster Cases. The Disaster Protocols require parties to exchange information and documents routinely requested in every Disaster Case ("Initial Discovery"). This Initial Discovery is unlike initial disclosures under federal or state rules because it includes favorable as well as unfavorable information and documents, is limited to information and documents that are not subject to objection, and is limited to the information and documents most likely to be important and useful in facilitating early settlement discussion and resolving or narrowing the issues requiring further litigation

(2) Definitions. The following definitions apply to cases under the Disaster Protocols.

a. *Claimed Loss.* "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.



NON-CERTIFIED COPY

b. *Document.* "Document" and "documents" are defined to be synonymous in meaning and equal in scope to the phrase "documents or electronically stored information" in FRCP 34(a)(1)(A) or similar state rules. A draft of a document or a nonidentical copy is a separate document.

c. *Event.* "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

d. *Identify (Documents).* When referring to documents, to "identify" means to describe, to the extent known: (i) the type of document; (ii) the general subject matter: (iii) the date: (iv) the author(s), according to the document; and (v) the person(s) to whom, according to the document, the document (or a copy) was to have been sent. Alternatively, to "identify" a document means to produce a copy.

e. *Identify (Natural Persons).* When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number: (iii) email address: (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

f. *Identify (Non-Natural Persons or Entities).* When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number: and (v) internet address. Once a corporate or other business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

g. *Insurer.* "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

h. *Insured.* "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

i. *Loss.* "Loss" means damage to the Property caused by the Event.

j. *Other Insurance.* "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.



NON-CERTIFIED COPY

k. ***Policy.*** "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

l. ***Property.*** "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

m. ***Relating to.*** "Relating to" means concerning, referring, describing, evidencing, or constituting.

(3) Instructions.

a. The relevant time period for this Initial Discovery begins on the date immediately before the Event and ends 21 days prior to the mediation under the Court's SSP, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below. The first disclosure is due 45 days from the date the defendant files responsive pleadings. A supplemental disclosure must be made 21 days prior to the mediation. In extraordinary circumstances of additional information that could not be provided previously coming into the possession of the responding party after the supplemental disclosure date, a second supplemental disclosure should be made before mediation.

b. This Initial Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection, including a joint defense agreement. Documents withheld based on a privilege or work-product protection claim are subject to expressly making the claim A detailed privilege log is required as specified in the applicable Case Management Order or any subsequent orders of the Court, otherwise documents withheld as privileged or work-product protected communications may be described briefly by category or type. Withholding documents on this basis does not alleviate any obligation to produce the withheld documents or additional information about them at a later date, if the court orders or the applicable rules require.

c. If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

d. For this Initial Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available. This Initial Discovery is subject to obligations on supplementation and relevant requirements concerning certification of responses. This Initial Discovery does not preclude either party from seeking additional discovery later under the rules.

e. This Initial Discovery is subject to the attached Interim Protective Order unless the



NON-CERTIFIED COPY

parties agree or the court orders otherwise. The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order. Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

f. Within 14 days after the later of entry of this Order or the filing of a responsive pleading by the responding party, the Parties shall meet and confer on the format (e.g.. searchable PDF, Excel spreadsheet) for the production of documents under these Disaster Protocols. This will not delay the timeframes for Initial Discovery, absent court order. Nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow.

**PART 2: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED.**

(1) Timing.
Unless the court orders otherwise, the Insured's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court).

(2) Information to be produced by the Insured:

a. A description of the Insured's ownership or other interest in the Property.

b. The address of the Property (or location of movable Property) on the date of the Event.

c. The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

d. Identify any current mortgagee or other known lien holder.

e. A computation of each item or type of Claimed Loss, including content claims if in dispute. When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

f. Identify any payments received under the Policy relating to the Event. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

g. Identify any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

h. Identify the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.



NON-CERTIFIED COPY

i. With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured on the same Property at issue in this litigation.

j. Identify the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

k. A general description, including the court and docket number, of any other lawsuits arising from the Event relating to the Property.

l. A general description of any known preexisting damage to the Property relating to the Claimed Loss.

m. A general description of any claims for property damage or lawsuits resulting from property damage in the past ten years relating to the Property.

n. Identify any sale, transfer, or foreclosure of the Property after the Event.

(3) Complete and unaltered copies of the following documents to be produced by the Insured:

a. Documents relating to the Claimed Loss, including: loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss. This shall include all reports or analyses, including draft reports, prepared on behalf of Insured.

b. Proofs of loss for the Claimed Loss.

c. Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

d. Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

e. Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

f. Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

g. The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

h. Appraisals or surveys of the Property condition within five years before, or any



NON-CERTIFIED COPY

time after, the Event.

i. If there has been an appraisal under the Policy, documents relating to the appraisal process.

j. Any other document(s) on which the Insured relies to support the Claimed Loss.

**PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.**

(1) Timing.

(2) Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 45 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 20 days of the date of this Order if that date is later. **The disclosures related to Insurers and the use of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.**

(3) Information to be produced by the Insurer:

a. **If there is a dispute over coverage**, in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:

i. Any exclusions or exceptions, or other coverage or legal defenses;

ii. The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;

iii. Whether there is also a dispute as to the value or amount of the Claimed Loss;

iv. Any other basis on which coverage was denied.

b. **If there is a dispute over all or part of the valuation**, an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:

i. The Insurer's understanding of the nature of the dispute;

ii. The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and

iii. The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

c. Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

d. Any payments previously made under the Policy relating to the Event.

e. A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.



NON-CERTIFIED COPY

f. Any other Event-related lawsuits filed for the Property or the Insured.

g. Identify the adjuster(s) who handled the claim.

h. Identify the individual(s) who evaluated, recommended, made, approved, or rejected the claim decision.

i. Identify the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision: and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

j. If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

(4) Complete and unaltered copies of the following documents to be produced by the Insurer:

a. The entire claim file maintained by the Insurer.

b. The complete Policy in effect at the time of the Event.

c. Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement. This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

d. Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

e. Any other evaluations of the Claimed Loss.

f. Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

g. Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss. This includes all written records, written communications, records of oral communications, reports, audits, or other records, including any documents, envelopes, logs, notes, or other documents evidencing when Insurer came into



NON-CERTIFIED COPY

possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

h. The complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage.

i. Proofs of loss for the Claimed Loss.

j. If there has been an appraisal under the Policy, all documents relating to the appraisal process.

k. Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, Hurricane Ida claims generally, or to similar types of claims generally such that they would therefore be applicable to the Hurricane Cases including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

l. **For non-NFIP Claims**, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

m. Any other document(s) on which the Insurer relies to support its defenses.



NON-CERTIFIED COPY

| | | |
|---|---|---|
| IN RE: HURRICANE IDA CLAIMS | : | STATE OF LOUISIANA |
| | : | PARISH OF ST. JOHN |
| | : | 40TH JUDICIAL DISTRICT COURT |

DEPUTY CLERK

## INTERIM PROTECTIVE ORDER

The Initial Discovery Protocols are designed to achieve more efficient and targeted discovery. Prompt entry of a protective order will allow the parties to begin exchanging documents and information without delay. The Interim Protective Order will remain in place until the parties agree to, or the court orders, a different protective order, but absent agreement or court order, the Interim Protective Order will not apply to subsequent discovery. The parties may agree to use the Interim Protective Order throughout litigation.

**IT IS HEREBY ORDERED** that the following restrictions and procedures apply to certain information, documents, and excerpts from documents and information the parties exchange in response to the Disaster Protocols:

1. Any party may designate as "Confidential" any document, or information contained in or revealed in a document, provided in response to these Protocols or, if applicable, in subsequent discovery, if the party determines, in good faith, that the designation is necessary to protect the party. Information and documents a party designates as confidential will be stamped "CONFIDENTIAL." Confidential information or documents are referred to collectively as "Confidential Information."

2. Unless the court orders otherwise, the Confidential Information disclosed will be held and may be used by any person receiving the information solely in this litigation.

3. If a party challenges another party's Confidential Information designation, counsel must make a good-faith effort to resolve the dispute. If that is unsuccessful, the challenging party may seek resolution by the court. Nothing in this Interim Protective Order is an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and court rules.

4. Information or documents designated as "Confidential" must not be disclosed to any



NON-CERTIFIED COPY

person, except:

a. the requesting party and counsel, including in-house or agency counsel;

b. employees of counsel assigned to and necessary to assist in the litigation;

c. consultants or experts assisting in the prosecution or defense of the litigation, to the extent deemed necessary by counsel;

d. any person from whom testimony is taken or is to be taken in this litigation, but that person may be shown the Confidential Information only in preparation for, and during, the testimony and may not retain the Confidential Information; and

e. The judge, the court staff, including the clerk, case manager, court reporter, or other person with access to Confidential Information by virtue of his or her position with the court, or the jury.

f. The Special Master, his designated deputy, and any mediator involved in resolving the case, who shall all be subject to these confidentiality provisions.

5. Before disclosing or displaying Confidential Information to any person, a party must:

a. inform the person of the confidential nature of the information and documents; and

b. inform the person that the court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

6. The Confidential Information may be displayed to and discussed with the persons identified in Paragraphs 4(c) and (d) only on the condition that before any such display or discussion, each person must be asked to sign an agreement to be bound by this Order in the form attached as Exhibit 1. If the person refuses to sign an agreement in the form attached, the party seeking to disclose the Confidential Information may seek relief from the court.

7. The disclosure of a document or information without designating it as "Confidential Information" does not waive the right to designate the document or information as Confidential Information if the document or information is designated under this Order.

8. Documents or information filed with the court that is subject to confidential treatment under this Order, and any pleadings, motions, or other papers filed with the court disclosing any Confidential Information, must be filed under seal to the extent permitted by the law, rules, or court orders, and must be kept under seal until the court orders otherwise. To the extent the court requires any further act by the parties as a precondition to filing the documents or information under seal, the party filing the document or information is responsible for satisfying the requirements. If possible, only the confidential parts of documents of information filed with the court will be filed under seal.



NON-CERTIFIED COPY

9. At the conclusion of this litigation, the Confidential Information and any copies must be promptly (and in no event later than 60 days after entry of final judgment no longer subject to appeal) returned to the producing party or certified as destroyed, except that the parties' counsel may retain their working files on the condition that those files will remain confidential. Materials filed in the court will remain in the file unless the court orders their return.

10. Producing documents or information, including Confidential Information, in this litigation does not waive attorney-client privilege or work-product protection for the documents or information. under Louisiana Code of Evidence Article 502.

This Order shall not diminish the right of any party to apply to the court for a different or additional Protective Order relating to Confidential Information, to object to the production of documents or information. to apply to the court for an order compelling production of documents or information, or to modify this Order. Any party may seek enforcement of this Order, and any violation of this Order may be sanctioned by the Court.

**SO ORDERED** on this ______ day of ______________, 2021, at ____________, Louisiana.

______________________________
**Hon. VERCELL FIFFIE**
District Judge, Division A

______________________________
**Hon. NGHANA LEWIS**
District Judge, Division B

______________________________
**Hon. J. STERLING SNOWDY**
District Judge, Division C



NON-CERTIFIED COPY

# EXHIBIT 1

I have been informed by counsel that certain documents or information to be disclosed to me in connection with the matter entitled ______________________ have been designated as confidential. I have been informed that any of the documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in the documents to any other person. I further agree not to use this information for any purpose other than this litigation.

_________________________________ **DATE:** _______________

Signed in the presence of:

_________________________________

(Attorney)



NON-CERTIFIED COPY

NANCY LANDRY
SECRETARY OF STATE
P.O. BOX 94125
ATON ROUGE, LA 70804-9125

9489 0090 0027 6567 7412 46

Label 890-PB, Oct. 201
Pitney Bowes

STATE OF LOUISIANA
UNION · JUSTICE · CONFIDENCE
SECRETARY OF STATE

RECEIVED
FEB 01 2024
NAUTILUS INSURANCE GROUP
REGULATORY DEPT